UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:14-CV-946-SPM |
| X-L CONTRACTING, INC., | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This case is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 86); Plaintiffs' Motion to Strike (Doc. 100); and Defendant X-L Contracting, Inc.'s Motion to Further Amend Counterclaim and/or to Continue Trial Date (Doc. 102). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 11).

**I.    FACTUAL BACKGROUND**

The instant lawsuit was filed by two groups of plaintiffs: (1) several employee benefit plans and their trustees (the "Benefit Funds Plaintiffs"),[1] and (2) several labor organizations (the "Union Plaintiffs")[2] (collectively, "Plaintiffs"). Defendant X-L Contracting, Inc. ("X-L") is an

---

[1] The Benefit Funds Plaintiffs are Greater St. Louis Construction Laborers Welfare Fund, Construction Laborers Pension Trust of Greater St. Louis, and AGC – Eastern Missouri Laborers Joint Training Fund. The parties agree that the Benefit Funds Plaintiffs are employee benefit plans within the meaning of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 102(1), (3), 1132, & 1145.

[2] The Union Plaintiffs are Local Union Nos. 42, 53, and 110, Laborers International Union of North America, AFL-CIO. The parties agree that the Union Plaintiffs are labor organizations representing employees in an industry affecting commerce within the meaning of Sections 2(4), (5), (6), and (7) of the National Labor Relations Act, as amended, 29 U.S.C. § 152(4), (5), (6), &

employer. During the time period relevant to this litigation, X-L and the Union Plaintiffs were signatories to two collective bargaining agreements ("CBAs"): the Site Improvement Agreement (the "Site Agreement") and the Bituminous Paving Agreement—Highway (the "BPA"). The CBAs require employers to submit monthly fringe benefit contributions to the Benefit Funds Plaintiffs, based on the hours worked by any employee who performs covered work as defined by the CBAs. A complication arises when an employee whose normal place of employment is covered by the Benefit Funds Plaintiffs performs work in another geographic area covered by different benefit funds (for example, the Construction Industry Laborers Pension and Welfare Funds, also known as the "Outstate Funds"). In such a situation, the employer makes fringe benefit contributions on that employee's behalf to the Outstate Funds instead of to the Benefit Funds Plaintiffs. An employee who wants the contributions made on his behalf to the Outstate Funds to be transferred to the Benefit Funds Plaintiffs may complete a transfer request form with the Outstate Funds, at which point the Outstate Funds will transfer any contributions received to the Benefit Funds Plaintiffs.

Both CBAs provide that the Benefit Funds Plaintiffs have the right to police the employers' self-reporting of the hours worked through a payroll examination process. In addition, the CBAs bind the employers to the terms of trust agreements that create the Benefit Funds Plaintiffs, and those trust agreements also grant the Benefit Funds Plaintiffs the right to verify employer reporting through examination of the employer's payroll records.

In the summer of 2013, the Benefit Funds Plaintiffs sent several letters to X-L informing X-L that they had not received reports for the months of May and June 2013. Between June and November 2013, there were several telephone conversations between X-L's accountant and

---

(7), and Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185.

someone at the fringe benefit office in an attempt to resolve the issue. On November 22, 2013, the Benefit Funds Plaintiffs sent X-L a letter indicating that they had the reports for work performed under the Site Agreement but not for work performed under the BPA. (Doc. 87-2, at 5).

On February 25, 2014, the accountants for the Benefit Funds Plaintiffs sent a letter to X-L, requesting a payroll examination and setting forth the list of records that would be needed for the payroll examination. A dispute arose over the scope of the records that X-L was required to make available for the examination. X-L took the position that it was obligated only to provide payroll records for employees whom X-L contended were members of Laborers Locals 42-53-110 and not for other X-L employees,[3] and that it would not provide unredacted documents. The Benefit Funds Plaintiffs took the position that, pursuant to the relevant law as established by the United States Supreme Court, they were entitled to examine records of X-L's other employees as well. On April 24, 2014, Plaintiffs' accountant went to X-L's office to perform the field work for the payroll examination, and X-L provided access only to payroll records of X-L employees who were members of Laborers Locals 42-53-110.

On May 19, 2014, Plaintiffs filed their Complaint, asserting two claims. In their first count, Plaintiffs sought (a) an interlocutory order of accounting requiring X-L to submit its books and records to an accountant selected by Plaintiffs to determine the amounts owed to plaintiffs during the period of January 1, 2011 through March 31, 2014; (b) a judgment against X-L based upon the findings of the financial examination; (c) an order requiring X-L to submit its reports for the period of May and June 2013, along with the required contributions and

---

[3] The Court notes that X-L denies several of Plaintiffs' assertions with respect to X-L's refusal to provide payroll records for employees other than those who were members of Laborers Locals 42-53-110. However, the affidavit of Denis St. John on which X-L relies for those denials is consistent with Plaintiffs' assertions and does not support X-L's denials.

liquidated damages; (d) an order requiring X-L to make payments in the future to the Benefit Funds Plaintiffs in accordance with the terms and provisions of the collective bargaining agreement, and such collective bargaining agreements as may be negotiated and executed in the future; and (e) interest, liquidated damages, costs, accounting fees, and reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g). In their second count, Plaintiffs sought an injunction prohibiting X-L from performing work of a type covered by X-L's collective bargaining agreement with Laborers Locals 42-53-110 within the geographic area covered by that collective bargaining agreement until such time as X-L obtained a required surety bond or letter of credit.

On May 20, 2014, X-L was served with the Complaint. On May 21, 2014, Plaintiffs obtained a bond in the amount of $25,000 in favor of the Benefit Funds Plaintiffs. On May 30, 2014, counsel for X-L sent an email to counsel for the Benefit Funds Plaintiffs, stating that the missing May and June 2013 BPA reports had been submitted using the Site Agreement report forms and that the issue had been resolved. There appears to be no disagreement that this issue was resolved at that time.

On August 15, 2014, the Benefit Funds Plaintiffs served a request for production of documents. X-L continued to object to most of these requests on the grounds that Plaintiffs did not have a right to an audit of information related to X-L employees other than the union laborers subject to Plaintiffs' jurisdiction. However, on August 29, 2014, X-L emailed Plaintiffs with self-generated spreadsheets purporting to show that X-L had paid benefits to the Benefit Funds Plaintiffs that it should instead have paid to the Outstate Funds. X-L stated in the email that it was seeking a refund for the overpayment. On October 29, 2014, Plaintiffs filed a motion to compel the production of the requested documents. X-L opposed the motion and made multiple requests for additional time to respond to it. Prior to the second scheduled hearing date, X-L

agreed to produce numerous additional documents in response to the Plaintiffs' discovery requests, and Plaintiffs withdrew their motion to compel. X-L produced additional documents, and Plaintiffs' accountants performed a financial examination.

On April 28, 2015, after receiving additional documents from X-L, Plaintiffs' accountants produced a report showing that during the examination period (January 1, 2011, through March 31, 2014), X-L had misreported and overpaid a total of $26,728.18 to the Benefit Funds Plaintiffs, most of which should have been reported to the Outstate Funds.[4] The bulk of the misreported payments occurred in 2011 and 2012, with some in 2013 and none in 2014. For all periods in which contributions were received by the Benefit Funds Plaintiffs from X-L, the Benefit Funds Plaintiffs had provided the benefits for which the contributions were intended. For example, the amounts remitted to the Welfare Fund allowed the Welfare Fund to provide health insurance for the employee on whose behalf the contributions were received.

On December 31, 2014, X-L filed a counterclaim against Plaintiffs, seeking judgment "by the amount of the overpayment of [X-L]'s payment of contributions or 'fringe benefits' from January 1, 2010 to the present."

After a mediation between X-L and the Outstate Funds related to X-L's underpayment of the Outstate Funds, X-L paid $31,438.52 to the Outstate Funds for the period of January 1, 2010 through December 31, 2012. As part of that settlement, X-L was promised that the Outstate Funds would "process" the $31,438.52 and refund the same to Benefit Funds Plaintiffs. Between December 2015 and March 2016, the Outstate Funds remitted $28,658.87 to the Benefit Funds,

---

[4] X-L had reported and paid for 2,272.00 hours to the Benefit Funds that should have been reported to the Outstate Funds and had overpaid for an additional 186.25 hours for other reasons, for a total of 2,458.25 hours. The misreported and overpaid hours amounted to $29,460.25 in total contributions. However, because there were some months in which X-L had underpaid the Benefit Funds Plaintiffs and owed liquidated damages and interest, the total amount overpaid was $26,728.18.

- 5 -

representing all monies they had received in welfare and pension contributions for employees who were members of the unions who had worked for X-L during the examination period, and for whom the Outstate Funds had transfer authorizations.

On March 7, 2016, X-L filed its Amended Counterclaim against Plaintiffs. Although X-L does not expressly identify the legal theories on which it relies, it appears that X-L is asserting three claims. First, it appears that X-L asserts that Plaintiffs breached the Site Agreement by failing to return payments of fringe benefits made based on "inadvertent or immaterial error, or clerical mistake." *See* Amended Counterclaim, Doc. 81, Count I. Second, it appears that X-L asserts that Plaintiffs breached the Site Agreement by failing to enforce a "reciprocal agreement" included in the Site Agreement that requires Plaintiffs to recover fringe benefits paid to the Outstate Funds. *See id.*, Count II. Third, it appears that X-L asserts, in the alternative to its contract-based claims, that it is entitled to a return of its overpayments based on an equitable restitution theory.[5]

Plaintiffs seek entry of summary judgment in their favor on their Complaint and X-L's Amended Counterclaim.

## II. LEGAL STANDARD

The Court shall grant a motion for summary judgment "if the movant shows that there is

---

[5] X-L alleges that it mistakenly overpaid Plaintiffs for fringe benefits, that X-L demanded return of those payments, that Plaintiffs did not return the funds, and that X-L should receive judgment in the amount of the overpayment of X-L's payment of contributions. Those allegations are sufficient to assert an equitable restitution claim. *See Am. Cleaners & Laundry Co., Inc. v. Textile Processors, Serv. Trades, Health Care, Prof'l and Tech. Employees Int'l Union Local 161*, 482 F. Supp. 2d 1103, 1116 (E.D. Mo. 2007) (plaintiff stated a claim for restitution under the federal common law where it alleged that it made overpayments to a benefit fund, that the fund was obligated to transfer the payments, and that the fund failed to do so). The Court notes that Plaintiffs were on notice of this claim, as they address it in their motion for summary judgment. The Court further notes that despite the fact that X-L did not identify the legal causes of action under which it was proceeding, Plaintiffs did not file a motion for a more definite statement, nor did Plaintiffs file a motion to dismiss for failure to state a claim.

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the nonmoving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. The nonmoving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

### III. DISCUSSION

#### A. Plaintiffs' Motion for Summary Judgment on Plaintiffs' Complaint

Plaintiffs first assert that they are entitled to summary judgment on their Complaint. Although the Court has not issued any substantive rulings in this case, Plaintiffs state that they have "obtained all relief that they sought in their Complaint" because (1) a bond was obtained the day after X-L was served with the complaint; (2) X-L resolved its misreporting in regard to the May and June 2013 hours; and (3) Plaintiffs obtained access to all the information they needed to perform a payroll examination. Doc. 88-1, at pp. 7-8. Plaintiffs argue that because they are the "prevailing parties," they are entitled to attorney's fees and costs under ERISA Section

502(g), 29 U.S.C. § 1132(g).[6]

As a preliminary matter, Plaintiffs' statement that they obtained all the relief they sought in their Complaint (other than attorney's fees) raises the question of whether Plaintiffs' claims have been rendered moot. Because "mootness relates to justiciability and [the court's] power to hear a case, [the court] must consider it even though the parties have not raised it." *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (quotation marks omitted). "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot." *Id.* (quoting *Haden*, 212 F.3d at 469)). "If an issue is moot in the Article III sense, [the court] has no discretion and must dismiss the action for lack of jurisdiction." *Id.* An interest in attorney's fees is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). *See also Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 n.5 (8th Cir. 2006).

In light of Plaintiffs' unequivocal acknowledgement that they have obtained all the relief they sought in their Complaint (other than attorney's fees), it is clear that there are no present, live controversies with regard to the merits of Plaintiffs' claims. Therefore, the Court finds that Plaintiffs' claims are moot and must be dismissed for lack of subject matter jurisdiction. *See*

---

[6] Both parties appear to take the position that Plaintiffs must be the "prevailing parties" in order to prevail on their claim for attorney's fees. However, the Supreme Court held in 2010 that "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Rather, the applicable standard is that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Id.*

*Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (holding that because the plaintiff in an ERISA action "had received everything she requested in her benefit claim, that claim became moot and the district court lacked jurisdiction to enter summary judgment," despite the fact that the plaintiff still had a pending claim for attorney's fees under ERISA § 502(g)). To the extent that Plaintiffs' motion seeks summary judgment on the merits of those claims, that motion will also be denied as moot.

Although Plaintiffs' claims must be dismissed as moot, the Court retains jurisdiction to decide the question of whether Plaintiffs are entitled to attorney's fees and costs under ERISA § 502(g). *See Pakovich*, 653 F.3d at 492-93 (holding that even after plaintiff's ERISA claim was dismissed as moot, the court retained equitable jurisdiction to adjudicate the claim for fees under ERISA § 502(g); noting that allowing courts to exercise jurisdiction promotes ERISA's policy of protecting the interests of participants in employee benefit plans and their beneficiaries by providing for appropriate remedies, sanctions, and ready access to the federal courts); *Pfeiffer v. Schmidt Baking Co.*, Civ. No. CCB-11-3307, 2013 WL 4501302, at *4 (D. Md. Aug. 21, 2013) (dismissing the plaintiff's ERISA claims as moot, but retaining jurisdiction over the parties' dispute over attorney's fees). However, as discussed below, there remain other issues in the case that will require further briefing, and the Court finds it prudent to reserve ruling on Plaintiffs' request for attorney's fees until the substantive issues in the case have been fully briefed and resolved.

For all of the above reasons, Plaintiffs' claims will be dismissed as moot, and their motion for summary judgment will be denied as moot. Their request for attorney's fees will be addressed at the end of the case. The trial will be continued to permit time for this briefing.

### B. Plaintiffs' Motion for Summary Judgment on X-L's Amended Counterclaims

Plaintiffs contend that they are entitled to summary judgment on X-L's Amended Counterclaim. The Court will address each of X-L's claims in turn.

#### 1. Breach of the Site Agreement Based on Failure to Return Mistaken Payments

Plaintiffs first argue that they are entitled to summary judgment on X-L's claim that they breached the Site Agreement by failing to return mistaken payments, because the Benefit Funds Plaintiffs are not signatories to the Site Agreement.[7]

Because X-L's claim is that Plaintiffs breached a collective bargaining agreement, that claim is governed by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[8] To prevail on a claim for breach of a collective bargaining agreement, which is essentially a breach of contract claim, a plaintiff must demonstrate "(1) a contract between the plaintiff and defendant; (2) rights of the plaintiff and obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Erler v. Graham Packaging*, No. 4:14-CV-931 (JCH), 2014 WL 6463338, at *3 (E.D. Mo. Nov. 17, 2014) (quoting *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1055 (E.D. Mo. 2009)).

---

[7] Although Plaintiffs move for summary judgment on behalf of all of the plaintiffs, their memorandum in support of summary judgment is almost entirely focused on the Benefit Funds Plaintiffs and not the Union Plaintiffs. However, the two groups of plaintiffs are separate groups with different contractual obligations. Where necessary, the Court will address separately the claims and arguments as they relate to each group of plaintiffs.

[8] Section 301(a) "grant[s] federal courts jurisdiction over claims asserting breach of collective-bargaining agreements," *Lividas v. Bradshaw*, 512 U.S. 107, 122 (1994), and it preempts state law claims that are either based on a provision of a CBA or dependent upon an analysis of the relevant CBA. *Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009).

The Court agrees that X-L cannot satisfy the first element with respect to the Benefit Funds Plaintiffs. Plaintiffs have submitted copies of the Site Agreement, and neither the section of the Site Agreement naming the parties nor the signature page of the Site Agreement lists any of the Benefit Funds Plaintiffs as parties or signatories. Instead, the parties are an employer association and Laborers' Locals 42-53-110. X-L does not cite any evidence to suggest that the Benefit Funds Plaintiffs were parties to the contract; instead, it asks the Court to take judicial notice of Plaintiffs' response to Paragraph 7 of Defendant's Amended Counterclaim. In Paragraph 7, X-L alleged that "the above parties [those described in paragraphs 1 through 6 of the Amended Counterclaim, which included both Union Plaintiffs and Benefit Funds Plaintiffs] are also signatories to a collective bargaining agreement known as the Site Agreement . . . ." *See* Doc. 81, ¶ 7. In their answer, Plaintiffs stated, "Plaintiffs admit that plaintiffs and defendant are signatory to a collective bargaining agreement commonly referred to as the Site Agreement," without distinguishing between the Benefit Funds Plaintiffs and the Union Plaintiffs. *See* Doc. 83, ¶ 7. In their reply brief, Plaintiffs state that they erroneously omitted the word "unions" after the reference to "plaintiffs."

In light of the clear evidence of the contract itself, Plaintiffs' carelessly drafted answer to one allegation in X-L's Amended Counterclaim does not create a genuine dispute of material fact that precludes summary judgment. Because the undisputed evidence demonstrates that the Benefit Funds Plaintiffs were not parties to the Site Agreement, the Benefit Funds Plaintiffs cannot be held liable for breaching it, and the Benefit Funds Plaintiffs are entitled to summary judgment on X-L's claim that they breached the Site Agreement by failing to return mistaken payments.

The Union Plaintiffs, however, *are* signatories to the Site Agreement. As such, X-L can satisfy the first element of the claim as to the Union Plaintiffs. However, Plaintiffs argue that even if the first element is satisfied, X-L cannot satisfy the second or third elements, because the Site Agreement does not create a contractual obligation to return mistaken overpayments made by an employer. The Court agrees. X-L alleges that Plaintiffs violated the provision of the Site Agreement providing for the return of payments of fringe benefits "in the case of inadvertent or immaterial error, or clerical mistake." However, Plaintiffs point out that the only reference to "inadvertent or immaterial error or clerical mistake" in the Site Agreement is in Section 5.11, which states that the Benefit Funds shall have the right to examine employer documents, that the cost of the examination and audit shall be paid by the employer under certain circumstances, and that "such allocation of cost to the Employer shall not apply in the case of inadvertent or immaterial error, or clerical mistake." *See* Doc. 87-1, at p. 29. That provision plainly does not require the Union Plaintiffs to return fringe benefit payments that were mistakenly made, and X-L does not identify any other provision that might form the basis of its claim. Thus, the Union Plaintiffs are also entitled to summary judgment on X-L's claim that they breached the Site Agreement by failing to return mistaken payments.

2. *Breach of the Site Agreement Based on Failure to Enforce the Reciprocal Agreement*

Plaintiffs argue that they are entitled to summary judgment on X-L's claim that they breached the Site Agreement by failing to enforce the reciprocal agreement, because the Benefit Funds Plaintiffs are not signatories to the Site Agreement. With respect to the Benefit Funds Plaintiffs, the Court agrees. As discussed above, the Benefit Funds Plaintiffs are not parties to the Site Agreement and cannot be held liable for breaching it.

With respect to the Union Plaintiffs, however, Plaintiffs have provided no argument to support their motion for summary judgment on this claim. The Court finds it appropriate to defer ruling on this aspect of Plaintiffs' motion until it has received supplemental briefing from the parties. The Court will set a briefing schedule below.

### 3. Equitable Restitution

Plaintiffs next argue that, to the extent that X-L has pleaded a claim for equitable restitution, Plaintiffs are entitled to summary judgment on that claim.[9] As Plaintiffs acknowledge, the Eighth Circuit has recognized that "an employer has a federal common law action for restitution of mistakenly made payments to an ERISA plan." *Young Am., Inc. v. Union Cent. Life Ins. Co.*, 101 F.3d 546, 548 (8th Cir. 1996). The factors relevant to assessing whether restitution would be equitable include (1) whether the contributions are the sort of mistaken payments that equity demands be refunded; (2) whether the employer delayed bringing the action for so long that laches, or some other equitable defense, bars recovery; (3) whether the employer, by continuing the payments for years without apparent question, somehow ratified past payments; and (4) whether the employer can demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied. *Greater St. Louis Contr. Laborers Welfare Fund v. Park-Mark, Inc.*, 700 F.3d 1130, 1135 (8th Cir. 2012) (citing *UIU Severance Pay Trust Fund v. Local Union No. 18–U*, 998 F.2d 509, 513 (7th Cir. 1993)). In addition, "a fund's policies cannot be arbitrary and capricious, including the decision not to refund mistakenly made payments." *Id.*

---

[9] Plaintiffs argue that X-L has not stated a cause of action for equitable restitution. However, as discussed above, the Court finds that X-L's Amended Counterclaim does state a claim for equitable restitution, and Plaintiffs were clearly on notice of that claim.

Although Plaintiffs offer some arguments as to why they believe X-L is not entitled to restitution, they have not sufficiently briefed the issue. As such, the Court is unable to determine whether Plaintiffs are entitled to summary judgment. First, Plaintiffs do not discuss or address the relevant factors outlined in *Park-Mark*. Most notably, Plaintiffs do not address the obvious question of whether they would be unjustly enriched if they were permitted to retain both the $26,728.18 that X-L originally mistakenly paid to Plaintiffs instead of to the Outstate Funds *and* the $28,658.87 that X-L later paid to the Outstate Funds and that Plaintiffs recently recovered. Second, although Plaintiffs emphasize that they have a policy of not providing refunds of pension contributions going back more than two years from the request, they do not explain how the Court should consider that policy in the context of the factors set forth by the Eighth Circuit for the evaluation of restitution claims.[10] Third, Plaintiffs' argument that the plan administrator's decision with respect to a refund "is subject to review only for an abuse of discretion" is not supported by the cases Plaintiffs cite for that proposition in their brief. *See, e.g.*, *Park-Mark, Inc.*, 700 F.3d at 1134-37 (addressing the question of equitable restitution based on the factors described above rather than by simply determining whether the plan administrator had abused its discretion; discussing "abuse of discretion" only as the standard for reviewing a particular ruling by the trial court). Finally, Plaintiffs' suggestion that they are "prohibited by law from returning [the money obtained from Outstate Funds] to X-L" is puzzling in light of Plaintiffs' submission of evidence to this Court showing that in February 2016, Plaintiffs' counsel *did* offer to return that money to X-L, on the condition that X-L agree to deduct $12,000 in Plaintiffs' attorney's fees. *See* Email from Janine Martin to Steve Alheim, Feb. 23, 2016, 11:38 a.m., Doc. 76-6 ("The St. Louis Funds are willing to assume we have the full $31, xxx that X-L paid to [the Outstate

---

[10] It is also unclear to the Court when this policy went into effect and whether it covers all of the overpayments at issue.

Funds] and are willing to pay that amount to X-L, minus half our fees.").[11] It is unclear what has changed since February, such that Plaintiffs now contend that the transfer of funds they once offered to X-L is prohibited by law.

X-L, for its part, also does not address the equitable factors set forth by the Eighth Circuit in *Park-Mark*, nor does it address any of the other issues described above. It simply notes that the cause of action for equitable restitution exists, relying on a case that predates both the Eighth Circuit's recognition of the cause of action and its articulation of the relevant factors to be considered. *See E.M. Trucks, Inc., v. Cent. States Pension Plan*, 517 F. Supp. 1122 (D. Minn. 1981).

For the above reasons, the Court cannot determine from the briefing currently before it whether there are genuine issues of material fact concerning X-L's equitable restitution claim. In light of the fact that the Court has already found it necessary to request briefing on another issue, the Court finds it appropriate to defer ruling on Plaintiffs' motion for summary judgment with respect to the claim for equitable restitution until the Court has received supplemental briefing from the parties that specifically addresses the relevant Eighth Circuit law governing equitable restitution claims and explains how that law applies to the facts of this case.

### 4. *Possible Causes of Action Under ERISA or the LMRA*

Finally, the Court will address X-L's suggestion in its opposition brief that its claims may arise under Section 502(g) of ERISA or Section 301(a) of the LMRA. The Court agrees with Plaintiffs that X-L's arguments are completely without merit and that X-L has no viable cause of action under these statutes.

---

[11] Plaintiffs used that evidence to support their representation to the Court that there was no reason to grant X-L's request to amend its counterclaims or add new parties, because Plaintiffs had informed X-L that the pot of money received "would be available so that the case would be resolved without further expense." *See* Doc. 76.

First, X-L states that "Section 502(g) provides X-L with a Refund." Def's Mem. Opp., Doc. 97, at p. 7. However, Section 502(g) of ERISA addresses only the court's discretion to award attorney's fees and costs in certain ERISA actions. *See* 29 U.S.C. § 1132(g)(1). It does not in any way address the issue of an employer's right to a refund of mistaken payments and does not provide X-L with a right to a refund.

Second, X-L argues that Section 301(a) of the LMRA, which permits "suits for violations of contracts between an employer and a labor organization representing employees" to be brought in federal court, "authorizes employers to sue trustees who fail to abide by trust agreements." Def's Mem. Opp'n, Doc. 97, at p. 11. However, the cases on which X-L relies for this proposition have nothing to do with authorizing employers to sue trustees of employee benefit plans. *See Retail Clerks Int'l Ass'n v. Lion Dry Goods*, 369 U.S. 17 (1962) (addressing the question of what types of agreements between an employer and a labor organization are covered by Section 301(a)); *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962) (holding that an individual member of a union may bring suit against an employer under Section 301(a)). These cases provide no support for the position that an employer may sue a trustee who is not party to a contract for a violation of that contract.

For all of the above reasons, the Court finds that as to X-L's claim that Plaintiffs breached the Site Agreement by failing to return mistaken payments, both the Benefit Funds and the Union Plaintiffs are entitled to summary judgment. As to X-L's claim that Plaintiffs breached the Site Agreement by failing to enforce the reciprocal agreement, the Benefit Funds Plaintiffs are entitled to summary judgment, but the Court will defer ruling with respect to the Union Plaintiffs. As to X-L's claim for equitable restitution, the Court will also defer ruling.

### C. X-L's Motion to Amend Counterclaim and/or Continue the Trial Date

On June 3, 2016, X-L filed a Motion to Further Amend Counterclaim and/or to Continue Trial Date. (Doc. 102). The Court first considers X-L's request for leave "to further amend its Counterclaim to make reference to the ERISA statute as well as the Labor Management Relations Act." The Court's most recent order addressing amendment of claims gave X-L until March 7, 2016 to amend its counterclaims, so X-L must show "good cause" for amending its pleading now. *See Sherman v. Winco Fireworks Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). X-L provides no argument as to why it needs to amend its counterclaims to include references to ERISA or the LMRA, nor does it explain why it could not have included such references earlier. It also has not submitted any proposed amended counterclaims for the Court's evaluation. Thus, X-L has not shown good cause, and its motion will be denied.

The Court next addresses X-L's request to continue the trial date. This request is moot in light of the Court's independent decision to continue the trial date to permit additional briefing on Plaintiffs' motion for summary judgment.

Finally, the Court addresses X-L's assertion that it needs to conduct additional discovery. To the extent that X-L seeks additional discovery on the question of who was a signatory to the Site Agreement and BPA, the request is denied. X-L was a signatory to those agreements, and the agreements (including their signature pages) have long been available to X-L. There is no reason that, at this late date, X-L should need additional time to find out which parties it contracted with.

The Court finds that it would be premature to address X-L's suggestion that it needs to conduct additional discovery regarding Plaintiffs' alleged "refund policy," given that it is unclear what relevance that policy has to the claims at issue in this case. If Plaintiffs rely on the policy in

their supplemental briefing, X-L may file a properly supported motion for leave to conduct discovery related to the policy, and the Court will address the motion at that time.

### D. Plaintiffs' Motion to Strike

Plaintiffs move to strike from X-L's pleadings and exhibits all references to statements or assertions made in mediation by Plaintiffs. Plaintiffs request that several specific portions of X-L's pleadings and exhibits be stricken because they reference mediation communications.

The Local Rules of the United States District Court for the Eastern District of Missouri state that "All written and oral communications made or disclosed to the neutral are confidential and may not be disclosed by the neutral, any party, or other participant, unless the parties otherwise agree in writing." E.D. Mo. L. R. 6.04(A). Moreover, the parties' Mediation and Confidentiality Agreement provides that "written and oral communications made or disclosed in the course of this mediation are confidential. Such communications may not be disclosed by any of the undersigned to any third party." Doc. 100-1, ¶ 2. It also provides that "Evidence of offers of settlement or other conduct or statements in the course of attempting to negotiate a settlement through mediation are not admissible into evidence or subject to discovery." Doc. 100-1, ¶ 4.

Based on the Local Rules and the parties' mediation agreement, the Court agrees that disclosures of communications made in mediation must be stricken from X-L's pleadings and exhibits. However, after reviewing Plaintiffs' specific requests, the Court finds them to be overly broad and to encompass some statements that simply reference the mediation and do not disclose mediation communications. For example, the Court will not strike Paragraphs 13 and 14 of Kenneth Novel's affidavit, because they simply describe the terms of the resolution X-L reached with the Outstate Funds "after Court ordered mediation" and do not disclose communications made during the mediation. Accordingly, the Court will grant Plaintiffs' motion to strike in part

and deny it in part. The Court will grant the motion to strike the following: (1) the portion of Paragraph 41 of X-L's Responses to Plaintiffs' Statement of Uncontroverted Material Facts beginning, "X-L's request is timely . . ." through the end of that sentence, Doc. 96; (2) the portion of Paragraph 18 of Kenneth Novel's Affidavit, Doc. 96-1, that begins "again at Court ordered mediation . . ."; (3) the portion of Paragraph 21 of Kenneth Novel's Affidavit that states, "that even mediator Ronald K. Fisher believed and told the parties that resolution could not be reached without Construction Industry"; (4) Paragraphs 9, 11, and 23 of Matthew St. John's Affidavit, Doc. 96-4; and (5) Paragraph 5 of Stephen Alheim's Affidavit, Doc. 96-13. In all other respects, Plaintiffs' motion to strike will be denied.

### E. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that the claims in Plaintiffs' Complaint are **DISMISSED** as moot, with the Court reserving jurisdiction over the issue of Plaintiffs' claim for attorney's fees.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 86) is **GRANTED IN PART, DENIED IN PART**, and **DEFERRED IN PART**. With respect to Plaintiffs' own claims, the motion is **DENIED** as moot in light of the Court's dismissal of those claims. With respect to X-L's counterclaim asserting that Plaintiffs breached the Site Agreement by failing to return mistaken payments, the motion is **GRANTED** with respect to all plaintiffs. With respect to X-L's counterclaim asserting that Plaintiffs breached the Site Agreement by failing to enforce the reciprocal agreement, the motion is **GRANTED** with respect to the Benefit Funds Plaintiffs and **DEFERRED** with respect to the Union Plaintiffs until the Court receives further briefing. With respect to X-L's counterclaim for equitable restitution, the motion is

**DEFERRED** until the Court has received further briefing.

**IT IS FURTHER ORDERED** that Plaintiffs shall, by **Wednesday, July 6, 2016,** file a supplemental brief addressing the following issues: (1) whether Plaintiffs contend that the Union Plaintiffs are entitled to summary judgment on X-L's counterclaim asserting that Plaintiffs breached the Site Agreement by failing to enforce the reciprocal agreement, and if so, the legal and factual basis for that contention; and (2) whether Plaintiffs contend that they are entitled to summary judgment on X-L's counterclaim for equitable restitution, and if so, the legal and factual basis for that contention. If Plaintiffs are seeking judgment on those questions, their brief should address the specific issues raised in the body of this Memorandum and Order. Any Opposition brief must be filed within **fourteen (14) days** of the filing of Plaintiffs' brief, and any reply must be filed within **seven (7) days** of any the filing of the Opposition.

**IT IS FURTHER ORDERED** that the trial setting of July 11, 2016, is **VACATED**. If necessary, the Court will set a new trial date following full resolution of Plaintiffs' summary judgment motion.

**IT IS FURTHER ORDERED** that X-L's Motion to Further Amend Counterclaim and/or to Continue Trial Date (Doc. 102) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (Doc. 100) is **GRANTED IN PART** and **DENIED IN PART** as set forth in the body of this Memorandum Opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of June, 2016.